IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 06-00080 som |
| | ) | |
| Plaintiff, | ) | ORDER REQUESTING BRIEFING |
| | ) | |
| vs. | ) | |
| | ) | |
| KEVIN GONSALVES,    (03) | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER REQUESTING BRIEFING

Defendant Kevin Gonsalves and the Government have signed a Memorandum of Plea Agreement, which has been submitted to the court for review in anticipation of a hearing on Defendant's motion to withdraw his not guilty plea and to plead anew.

This case has a long history well known to the parties. In summary, Defendant and others were charged in an Indictment that included counts of murder committed for the purpose of maintaining positions in a RICO enterprise. In February 2008, on the eve of trial, Defendant pled guilty with a plea agreement. The guilty plea included a plea of guilty to a murder count, which, as noted in the plea colloquy Defendant had with the court, carried a statutory mandatory life sentence. In the plea agreement, Defendant and the Government agreed to a specific sentence of 27.5 years under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. To overcome the statutory mandatory life sentence, the Government filed a motion asking for a

sentence below life in prison based on what the Government described as Defendant's substantial assistance to the Government in obtaining the guilty pleas of others.  At the time of sentencing, the court denied the Government's substantial assistance motion, stating that the record before it did not contain evidence of substantial assistance.  Rather, the record only established that Defendant and co-Defendants had pled guilty on the same day, not that Defendant had caused anyone else to be prosecuted or to plead guilty.  Having rejected the plea agreement, the court permitted Defendant to withdraw his earlier guilty plea and set the matter for trial.  Defendant now presents a new plea agreement.

The new plea agreement also contains the parties' agreement to a sentence of 27.5 years.  It differs from the earlier plea agreement in being based on a plea of guilty to an Information that does not include any murder count.  The charges in the Information do not carry a mandatory life sentence, although the plea agreement includes Defendant's admission to murder.

This court has reviewed the presentence investigation report prepared in connection with the sentencing hearing that flowed from the plea agreement that was ultimately rejected.  With that information, this court examines the new plea agreement considerably more informed than it is in the normal case, in

which the court conducts a Rule 11 plea colloquy before a presentence investigation report has been prepared.

The court now requests briefing from the parties on the issue of whether the charges in the Information adequately reflect the seriousness of Defendant's conduct, and whether the proposed sentence of 27.5 years adequately reflects the seriousness of the offense. The new plea agreement states, at paragraph 9, that "the parties agree that the charges to which the Defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing." At paragraph 10(b), the new plea agreement states that a sentence of 330 months "(1) takes into account the nature and circumstances of the offenses and the history and characteristics of the Defendant; (2) reflects the seriousness of the offenses; (3) promotes respect for the law; (4) provides just punishment for the offenses; (5) affords adequate deterrence to criminal conduct; and (6) protects the public from further crimes of the Defendant." The court now asks the parties to provide the bases for these statements.

The parties may want to review <u>United States v. Torres-Echavarria</u>, 129 F.3d 692 (2d Cir. 1997). This court reserves any decision on accepting or rejecting the plea agreement.

To aid the parties in their briefs, this court makes the following points.

First, the court stresses that it recognizes a prosecutor's discretion to determine what charges, if any, to seek. This court in no way seeks to intrude into the arena of prosecutorial discretion. However, this case involves the unusual circumstance of a record that supports a federal murder charge with a mandatory life sentence. Putting aside the issue of what evidence would be admitted if this case went to trial, the court has an uncontested record supporting the federal murder conviction. That is a critical difference from what the record typically provides when a judge is presented with a plea agreement. Congress has determined that the federal murder conviction merits a mandatory life sentence. Congress has provided two methods by which a defendant may escape a life sentence: qualification for the safety valve, which clearly does not apply here, or the granting of a government motion acknowledging the defendant's substantial assistance in the prosecution or conviction of one or more other persons. The parties here propose that Defendant, having indisputably committed murder, escape a life sentence not through those statutory means, but by pleading to something less than the record supports with a plea agreement they ask this court to accept. This court has considerable discretion in evaluating a

4

plea agreement and asks the parties to address why the decision by Congress that Defendant's behavior merits a mandatory life sentence should be overcome by a plea agreement in the face of a record that establishes Defendant's actions.

Second, this court recognizes the parties' commitment to the sentence they agreed to in the rejected plea agreement.  Counsel is understandably motivated, both by duties to clients and by the importance of maintaining credibility with opponents, to attempt to reach the same result through other means.  However, in seeking approval of a sentence of 27.5 years, the parties have not identified for the court what they are giving up in return for agreeing to such a sentence.  Certainly, the parties are giving up the right to go to trial and win their respective cases, and they are saving themselves considerable time, money, and risk.  The question the court has is whether any party is giving up anything of value in giving up the right to go to trial.  Another way of putting the question is to ask what, if any, risks are the parties protecting themselves from?  The answer to this question may influence this court's view of whether the Information adequately reflects the seriousness of Defendant's actions, and whether the proposed sentence meets the goals of sentencing.

Thus, if trial on the original charges would almost certainly result in acquittal, then Defendant is clearly giving

5

up something better for something less, and the Government is gaining a great deal through the new plea agreement.  The court is interested in learning why it should approve the new plea agreement if that is so.  Even if acquittal would not be assured, is Defendant giving up a viable defense or appellate issue in entering into the plea agreement, and is the proposed 27.5-year sentence commensurate with what Defendant is giving up?  Is the Government saving itself from certain evidentiary difficulties it would face if the case went to trial, and, if so, are those difficulties commensurate with what the Government is giving up?

If, on the other hand, trial on the original charges would almost certainly result in conviction, then the Government is giving up a conviction with a mandatory life sentence in return for a conviction with an agreed-upon 27.5-year sentence.  If that is the situation, the Government is giving up something better (from its point of view) for something less, and Defendant clearly reaps certain benefits without giving up anything in return.  He receives a sentence below life while maintaining his position, expressly stated in paragraph 10(d) of the plea agreement, that the Government cannot require him to testify against anyone else.  He also avoids the uncertainty he would face if he proceeded in state court and had to face a state parole board that would not commit to release him after 27.5 years.  Again, the court is interested in understanding why it

6

should approve the plea agreement if the Government believes it would likely obtain conviction on the original charges and if Defendant cannot identify a viable defense or issue.

Viable defenses or appellate issues on the defense side, as well as proof difficulties on the Government side, may indeed exist.  However, the parties have not to date identified for the court such defenses, issues, or evidentiary problems.  By way of illustration only (and not instruction or recommendation), the court notes that the parties may want to consider addressing the court's concern by providing details of what they might face if the case were tried.  That is, one of the factors the court will consider in evaluating the plea agreement is the difficulty each party faces in trying the original charges, and the likelihood of each side's success.  Presumably, each side would want to outline any difficulty ex parte, which the court would allow if no other party objected.  Although the court provides this illustration, it fully understands that the parties may not be able to establish such difficulty or may not want to do so.  For example, the parties may be concerned that, even after reviewing details provided by the parties, the court will nevertheless reject the plea agreement, leaving the parties with a trial judge who will make evidentiary rulings informed by the parties' ex parte admissions of the weaknesses in their proof.  Even if this judge reviews details from the parties, rejects the plea agreement, and

then considers recusing herself from the trial, the court will want to be assured that the replacement judge will try the case, not go through the same plea agreement exercise presented to this judge, leading to a repetition of the entire exercise.

In raising the above matters, the court by no means intends to indicate that it is committed to rejecting any plea agreement the parties may submit. Nor are the parties restricted to identifying trial difficulties in demonstrating to the court why it should accept the new plea agreement. There may be other information the parties could provide, and they are invited to present such other material.

The parties are well aware that they can avoid the entire issue of the mandatory life sentence through other means. Defendants could, for instance, provide actual substantial assistance to the Government. They could, alternatively, opt to resolve this case in state court, where charges remain pending. The court, unlike the parties, has never committed itself to any particular sentence, but the parties are by no means entirely dependent on rulings by this judge in seeking such a sentence. In saying that, this court stresses that it is not suggesting that it will reject the new plea agreement or that the parties should seek other avenues. The court is only noting that the parties are not restricted to the approach they are now taking.

The Rule 11 hearing on Defendant's proposed change of plea is set for Wednesday, September 24, 2008, at 1 p.m.  The briefs requested in the present order must be filed no later than 9 a.m. on Wednesday, September 24, 2008.  The court must shortly mail out hundreds of juror questionnaires if trial is to proceed as scheduled on October 21, 2008.

      IT IS SO ORDERED.

      DATED: Honolulu, Hawaii, September 22, 2008.



    /s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

United States v. Kevin Gonsalves; Cr. No. 06-00080 SOM; ORDER REQUESTING BRIEFING